NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERTO A., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, L.A., N.A., *Appellees.*

No. 1 CA-JV 15-0302
FILED 1-26-2016

Appeal from the Superior Court in Maricopa County
No. JD24065
The Honorable Sally S. Duncan, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

¶1        Roberto A. ("Father") appeals the juvenile court's order terminating his parental rights to L.A. and N.A. (collectively, "the children"). Father does not contest the court's finding of four statutory grounds for severance, but contends the juvenile court erred in concluding severance was in the children's best interest. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        Father and S.A. ("Mother") are the biological parents of the children, who were born in 2006 and 2009, respectively.[2] In May 2013, the Department of Child Safety ("DCS") received a report stating that Father was selling drugs from the home and neglecting the children. A DCS case manager investigated and requested that the parents clean their apartment and submit to urinalysis ("UA") testing through TASC; both parents tested

---

[1]        As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4, 100 P.3d 943, 945 (App. 2004)). We therefore view the evidence and reasonable inferences to be drawn from it in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[2]        The juvenile court also terminated Mother's parental rights, but she is not a party to this appeal. Mother has three other children with different fathers, and although those children and their fathers were also subject to the dependency petition in this case, none of them were subject to the severance order at issue in this appeal.

positive for morphine and other illegal substances. The family moved before DCS could again contact them.

¶3          On July 23, 2013, DCS received another report regarding the family at a new address. The DCS case manager visited the family's apartment and found it "was filthy and infested with cockroaches" and "smelled like urine." Moreover, the children appeared "dirty" with unclean clothing and had lice. Mother and Father admitted using heroin in the home while the children were present. DCS took L.A., N.A., and their three older half-siblings into protective custody that day.

¶4          On July 26, 2013, DCS filed a dependency petition, alleging Father and Mother were abusing illegal substances and neglecting the children.[3] The petition noted in part that the parents had been evicted from two apartments in the previous six months, and "[t]he last apartment in which the children were living was infected with bedbugs and all of their clothes had to be abandoned."

¶5          In October 2013, the juvenile court found the children dependent as to both parents and approved a case plan of family reunification. DCS offered the parents an array of services designed to reunify the family, including UA testing through TASC, substance abuse assessment and treatment through TERROS, psychological consultations and evaluations, individual counseling, parent aide assistance, visitation, and bus passes. DCS also asked Father to complete classes addressing domestic violence and substance abuse. However, Father did not comply with the UA testing, substance abuse assessment and treatment, psychological evaluation, parent aide services, and counseling services offered by DCS. In fact, both parents continued to use illegal substances, failed or refused to engage in the recommended and offered services and classes, frequently failed to attend visits with the children, and failed to obtain stable housing. At one point, Mother advised the DCS case manager

_____

[3]          At the outset of these proceedings, the children were taken into care by Child Protective Services ("CPS"), formerly a division of the Arizona Department of Economic Security ("ADES"), and ADES filed the dependency petition in this case. In May 2014, however, CPS was removed as an entity within ADES and replaced by DCS, an entity outside of ADES. See 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2d Spec. Sess.). Accordingly, DCS was substituted for ADES in this matter, see ARCAP 27, and references to DCS in this decision encompass both ADES and the former CPS.

that she and Father "were living in abandoned houses and eating out of dumpsters."

¶6            In June 2014, DCS moved to terminate the parents' parental rights to L.A. and N.A.  As to Father, DCS initially alleged three grounds for termination:   (1) abandonment under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1); (2) chronic substance abuse under A.R.S. § 8-533(B)(3); and (3) at least nine months' out-of-home placement under A.R.S. § 8-533(B)(8)(a).[4]  At the time, DCS planned to place the children with their paternal grandmother ("Grandmother") in California and had started the approval process under the Interstate Compact on the Placement of Children ("ICPC").  *See generally* A.R.S. §§ 8-548 to -548.06.

¶7            Also in June 2014, Father was arrested for possession or use of a narcotic drug (heroin).  At the time of his arrest, he was on probation in two prior criminal cases.  In July 2014, Father pled guilty to possession or use of a narcotic drug, and the trial court sentenced him to 2.5 years' imprisonment.  On November 26, 2014, DCS amended the termination motion to add two additional grounds for severing Father's parental rights: (1) the length-of-sentence ground under A.R.S. § 8-533(B)(4) and (2) the fifteen months' out-of-home placement ground under A.R.S. § 8-533(B)(8)(c).

¶8            At the July 30, 2015 severance hearing, Father testified that although at one time he had expected to be released early—in May or August 2016—he had incurred several disciplinary infractions and his expected release date had been moved back to November 12, 2016.  He also testified he had sent the children letters while in prison, had completed a "positive parenting class," had recently been accepted into a nine-month substance abuse class entitled "Men in Recovery," and had attended NA/AA meetings and "school."  He admitted, however, that while he was in prison, he was unable to meet any of the children's basic needs such as food, housing, or medical care.

¶9            The DCS case manager, Heather Mills, testified at length and addressed whether it would serve the children's best interest to terminate Father's parental rights.  Mills testified that if Father's parental rights were not terminated, Father would need to engage in services to demonstrate his sobriety and stability after his release from prison, which would require

---

[4]      We cite the current version of all statutes cited because no changes material to our decision have occurred since the severance.

that the case remain open for at least a year after his release and perhaps longer—well into 2017 and possibly into 2018.[5] She opined that waiting for these events to happen would not serve the children's best interest, particularly because the children had already been in out-of-home care for two years, and it was "in their best interests to have some sort of stability [and] permanency" and not "have to worry about somebody coming in and moving them."

¶10 During the time the case had been open, the children had resided in four separate placements, and although they were in a licensed foster placement, they were not in an adoptive placement. Mills stated, however, that the children were thriving in their current placement and the behavioral issues they had previously displayed had subsided. Further, although there were no identified prospective adoptive placements at the time of the hearing, Mills believed the children were "very much" adoptable, in part because they were "great girls to be around." Mills explained the children had not yet been placed in an adoptive home because Grandmother had initially sought to have the children placed with her in California and the ICPC process had taken time, but Grandmother had recently advised that she was unable to take the children and did not know of any other family members willing or able to care for the children.

¶11 Mills agreed it might be more difficult to place older children in an adoptive home because adoptive families "are usually looking for infants and toddlers." She also explained, though, that it would likely be even more difficult to find adoptive homes for the children in a year or two (i.e., if the court were to wait longer to see if the parents could be rehabilitated) because they "would have more behaviors" after being in foster care for the additional time. She explained that, in her experience, as children in foster care get older, the probability increases that they will engage in risky behaviors such as drug use, promiscuity, and running away. For these reasons, it would not get easier to find adoptive placements as the children grew older.

¶12 Mills also testified the children would benefit if their parents' rights were terminated immediately because "it would give [the children] some sort of hope to move forward [and] to leave it all behind." Moreover, it would provide them with permanency and stability. Mills agreed that some prospective adoptive placements are interested only in children who

---

[5] Similarly, Mills explained that Mother would have to demonstrate at least six months to a year of sobriety and stability before the children could be returned to her care.

are legally free for adoption, and she believed L.A. and N.A. could be adopted within the next two years if the parents' rights were severed immediately.

¶13        At the conclusion of the hearing, the juvenile court found DCS had met its burden of proving by clear and convincing evidence the alleged statutory grounds for severance and that severing both Father's and Mother's parental rights was in the children's best interest.  In a signed minute entry order filed September 2, 2015, the court granted termination of the parents' parental rights.  As to Father, the court found DCS had proven grounds for severing his parental rights under A.R.S. § 8-533(B)(1) (abandonment), (B)(3) (chronic substance abuse), (B)(4) (length of sentence), and (B)(8)(a) (at least nine months' out-of-home placement).

¶14        Father filed a timely notice of appeal.  We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

¶15        Father appeals only the juvenile court's finding that termination of his parental rights was in the children's best interest.  Father contends severance "effectively orphans these children," and freeing the children for adoption is "an illusory benefit" because they are not placed in adoptive homes, there is no adoptive plan, and "the likelihood of them being adopted is very much in doubt."  He further contends, "[t]here would have been no harm in preserving [his] rights" until an adoptive home could be identified.  Because reasonable evidence supports the juvenile court's findings that terminating Father's parental rights would benefit the children, while continuing the dependency would harm them, we affirm.

¶16        On appeal, we do not reweigh evidence and will affirm the juvenile court's fact findings if supported by reasonable evidence.  *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93–94, ¶ 4, 210 P.3d 1263, 1264–65 (App. 2009); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002).  Moreover, "[t]he juvenile court will be deemed to have made every finding necessary to support the judgment."  *Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010) (citations omitted).

¶17        Parental rights in the care, custody, and management of their children are fundamental, but not absolute.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248,

¶¶ 11-12, 995 P.2d 682, 684 (2000)). A court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the best interest of the children. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41, 110 P.3d at 1015–16, 1022. Father does not contest the juvenile court's findings on the statutory grounds and, thus, has waived any argument on those grounds in this appeal. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App. 2000) (stating that issues not raised in appellate briefs are deemed waived).

**¶18** In proving severance is in the children's best interest, DCS must show "how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990) (citations omitted). The juvenile court may find that severance affirmatively benefits a child because an adoption plan exists, the child is adoptable, or the child is more stable in an existing placement. *See Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 107, 876 P.2d 1137, 1142 (1994) (recognizing the court may "consider evidence of whether the needs of the child are being met"); *Juv. Action No. JS-500274*, 167 Ariz. at 6–7, 804 P.2d at 735–36; *Oscar O.*, 209 Ariz. at 334, ¶ 6, 100 P.3d at 945. Severance may benefit a child if it would free the child for adoption or if the child "would benefit psychologically from the stability an adoption would provide." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994).

**¶19** The court may also find severance is in a child's best interest if it eliminates a threat or detriment to the child if the relationship between the parent and the children were allowed to continue. *See Juv. Action No. JS-500274*, 167 Ariz. at 6–7, 804 P.2d at 735–36; *Oscar O.*, 209 Ariz. at 334, ¶ 6, 100 P.3d at 945. "In most cases, the presence of a statutory ground will have a negative effect on the children." *Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559, 748 P.2d 785, 788 (App. 1988); *see also Kent K.*, 210 Ariz. at 286, ¶ 35, 110 P.3d at 1020 (stating that, in a best interest inquiry, "we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence" (citation omitted)). Thus, "where there is clear and convincing evidence of parental unfitness which has not been remedied notwithstanding the provision of services by [DCS] and which detrimentally affects the child's well-being, severance may be warranted and appropriate even in the absence of a plan for adoption." *Pima Cty. Juv. Action No. S-2460*, 162 Ariz. 156, 158, 781 P.2d 634, 636 (App. 1989).

**¶20** In this case, reasonable evidence in the record supports the juvenile court's best interest findings, which demonstrate both affirmative benefits from severance and the elimination of potential threats and detriments in continuation of the relationship. Although Father contends that severance "orphans" the children because DCS currently does not have an adoptive plan for them, the juvenile court found it was in the children's best interest to terminate the parents' rights "notwithstanding the fact that they are not in an adoptive placement." The court found severance would benefit the children because it would "provide the children permanency and stability and a higher likelihood of adoption" with the parental rights terminated. These findings are supported by the testimony of Mills, the case manager, who testified that although an adoptive placement had not yet emerged, the children were "very much" adoptable and would benefit psychologically from the permanence and stability an adoption would provide. "Adoptable" status is enough of an objective benefit to legally support the "best interest" prong of the severance statute. *See Juv. Action No. JS-501904*, 180 Ariz. at 352, 884 P.2d at 238 (stating the government did not need to show an adoption plan existed, but did need to show the child is adoptable). Moreover, Mills explained the children were thriving in their current placement, *see Juv. Action No. JS-8490*, 179 Ariz. at 107, 876 P.2d at 1142, while Father was incarcerated and unable to meet even their most basic needs. Thus, even without an adoptive placement waiting, the evidence in the record demonstrates the children's needs are being met in their current placement, which also supports the juvenile court's best interest finding. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998).

**¶21** The court additionally found that continuing the parent-child relationship would harm the children because Father would not be released from prison until November 2016, at which point a "lengthy reunification process" would begin. The court noted that the children had already "been in four placements, which is not a way for children to live." These findings were supported by Father's and Mills' testimony, as well as by exhibits presented at the hearing. At the time of the severance hearing, the children had already been in foster care for two years—while Father at first failed to engage in reunification services and then became incarcerated. Moreover, waiting an additional two or more years in foster care for Father to be released and then attempt reunification could both lead the children to engage in risky behaviors and decrease their chances of being adopted. Thus, severance is warranted in this case because evidence of parental unfitness exists that "detrimentally affects the child[ren]'s well-being," *Juv. Action No. S-2460*, 162 Ariz. at 158, 781 P.2d at 636, and would cause them

to "be harmed by the continuation of the relationship." *Juv. Action No. JS-500274*, 167 Ariz. at 5, 804 P.2d at 734 (citations omitted).

**¶22** The best interest finding is further supported by the fact that Father does not contest any of the statutory grounds for severance. As we have recognized, the presence of the conceded statutory grounds for severance may also negatively affect the children. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23, 312 P.3d 861, 866 (App. 2013). The termination grounds in this case—abandonment, chronic substance abuse, length-of-sentence, and nine months' out-of-home placement—are "serious in nature, involving grave misconduct . . . or complete abdication of parental responsibilities," *Kent K.*, 210 Ariz. at 286 n.8, ¶ 35, 110 P.3d at 1020 n.8, and support a finding that preserving the parent-child relationship would harm the children.

## CONCLUSION

**¶23** Because reasonable evidence supports the conclusion that the children would both benefit from having Father's parental rights terminated and be harmed by continuing the parent-child relationship, we affirm the juvenile court's best interest finding and order terminating Father's parental rights to the children.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama